UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN MILLER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No. 18-cv-01154-JES |

## ORDER AND OPINION

Now before the Court is Petitioner Brian Miller's Motion (Doc. 1) to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's Motion (Doc. 1) is DENIED. The Court grants a Certificate of Appealability on this matter.

### BACKGROUND[1]

Following a bench trial in this Court, Petitioner was convicted of twenty-two counts of attempted exploitation and exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e). He was sentenced to 216 months of imprisonment and 15 years of supervised release. That conviction stemmed from evidence that Petitioner does not dispute; he admits that he cut a hole in a wall in his home's basement bathroom, directed minor girls to shower in that bathroom, and took video recordings of those girls partially and fully nude. Doc. 1, p. 10. Petitioner appealed his conviction, and asserted, among other arguments, that there was insufficient evidence that the videos were lascivious or intended to be lascivious. Doc. 1, p. 12. His appeal was unsuccessful,

---

[1] Citations to documents filed in this case are styled as "Doc. __." Citations to the record in the underlying criminal case are styled as "R.__."

as was his petition for a writ of certiorari from the Supreme Court. *See United States v. Miller*, 829 F.3d 519 (7th Cir. 2016); *Miller v. United States*, 137 S.Ct. 2291 (2017).

While Petitioner was under federal investigation for exploitation of a minor, he hired attorney Joel Brown to represent him. Mr. Brown communicated with prosecutors from March 2013 through August 2013 in seeking a plea agreement. Doc. 8, p. 5. Ultimately, he advised his client to proceed to trial without accepting a plea agreement, under a belief that the images in question did not legally amount to pornography. Doc. 1, p. 8; Doc. 8, p. 15. Mr. Brown and his client chose to proceed with a bench trial on partially stipulated facts, challenging the applicability of the criminal statute to Petitioner's particular conduct. Doc. 8, pp. 17–18. At sentencing, Mr. Brown argued that Petitioner should qualify for a sentence reduction based on his acceptance of responsibility, given that he stipulated to all but his intent and the applicability of the statute. This argument was rejected. Doc. 8, p. 18; R. 68, pp. 33–35, 38.

Petitioner now claims that Mr. Brown was ineffective for failing to give Petitioner appropriate advice about the laws applicable to his conduct and the consequences of proceeding to a bench trial on partially stipulated facts. Additionally, Petitioner claims that Mr. Brown was ineffective on a number of other grounds, including failure to move to suppress evidence, failure to object at trial, and a conflict of interest. An evidentiary hearing was held on February 14, 2019 at which Mr. Miller, Mr. Brown, and Mr. Miller's mother and aunt testified.[2] This Order follows.

**LEGAL STANDARD**

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir.

---

[2] Attorney Derek Asbury was appointed to represent Petitioner at the evidentiary hearing. The Court thanks Attorney Asbury for ably discharging his duties.

1995), *cert. denied*, 116 S. Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993), citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993). A § 2255 motion is not a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is generally barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 719–20 (7th Cir. 1994). However, claims of ineffective assistance of counsel may be raised for the first time in a § 2255 proceeding, whether or not they could have been brought on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Bryant*, 754 F.3d 443, 444 (7th Cir. 2014).

Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). The seminal case on ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court stated that in order for a prisoner to demonstrate that counsel's performance did not meet the constitutional standard, the petitioner would have to show that "counsel's representation

fell below an objective standard of reasonableness." *Id.* at 687–88; *Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009). Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690.

A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado*, 936 F.2d 303, 311 (7th Cir. 1991). Thus, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

## DISCUSSION

Petitioner's three claims center around the behavior of his lawyer at trial, Joel Brown. Although his Motion contains a fourth ground alleging First, Fourth, Fifth, Sixth, and Eighth Amendment violations, Petitioner does not elaborate on the basis for that claim in his Motion, and he never filed an amended motion or supporting memorandum that complied with Local Rules. *See* Doc. 1, p. 6; Doc. 8, p. 19. As such, the Court will primarily address his three claims regarding ineffective assistance of counsel.

1. *Plea Proceedings*

Petitioner alleges that Mr. Brown advised him to reject a plea agreement that Petitioner was formally offered in August 2013. The plea agreement was for one substantive count, and the government would recommend a 10-year sentence. According to Petitioner, he wanted to accept

the plea agreement, but Mr. Brown advised him that he would receive no more than 10 years if he went to trial instead, so he should decline the offer. Doc. 1, p. 8. Petitioner ultimately declined the plea agreement, and the United States subsequently charged Mr. Miller with twenty-five counts of Sexual Exploitation of a Minor and Attempted Sexual Exploitation of a Minor. Doc. 8, pp. 1, 8. When Mr. Miller was convicted on twenty-two of these counts, he faced a statutory mandatory minimum of 15 years of imprisonment and a statutory maximum of 30 years. Doc. 8, p. 10. His Sentencing Guidelines range was 360 months (30 years), the statutory maximum for the offense, and the Court sentenced him to 216 months (18 years). *Id.*

At the evidentiary hearing on this matter, Petitioner testified that Mr. Brown did not inform him that rejecting the plea agreement could lead to more serious charges with heightened mandatory minimum sentences. That is, at the time, the United States offered to recommend the maximum sentence of 10 years if Petitioner pleaded guilty to one count of simple possession of child pornography. Petitioner claims Mr. Brown never informed him that the United States intended to pursue multiple production counts carrying a mandatory minimum of 15 years each if Petitioner rejected the plea offer. Rather, Petitioner stated that Mr. Brown assured him that he would be sentenced to no more than 10 years if he rejected the plea offer and proceeded to trial. Petitioner testified that if he had been aware of the risks, he would have accepted the plea when it was offered. Petitioner's mother also testified that Mr. Brown advised Mr. Miller not to plead guilty because it was a "win-win" situation: either they would win at trial on Mr. Brown's argument that the images did not constitute pornography, and Mr. Miller would face no jail time, or they would lose and face no more than the 10 years offered by the Government. Petitioner and his mother both testified that Petitioner had never planned to contest the underlying facts of what happened and wanted to plead guilty.

5

Mr. Brown testified at the evidentiary hearing that he explicitly informed Mr. Miller about the high risk involved in rejecting the plea, including that the Government would bring more serious charges in multiple counts carrying higher mandatory minimum sentences. Mr. Brown further testified that he never instructed Mr. Miller to reject the plea—rather, he gave Mr. Miller full information and offered his opinion about the best course of action, but left the ultimate decision to Mr. Miller. Mr. Brown testified that he never told Mr. Miller he could only get 10 years, but instead advised him that taking the case to trial would carry the risk of a 15-year mandatory minimum sentence for production of child pornography rather than simple possession. Mr. Brown also testified that had Mr. Miller insisted on accepting the 10-year plea offer, he would not have attempted to stop his client from doing do.

The Court evaluates attorney performance during plea negotiations according to what the attorney knew at the time of the negotiations, not in hindsight. *See Torres-Chavez v. United States*, 828 F.3d 582 (7th Cir. 2016). Mr. Brown testified that when he offered his opinion that Mr. Miller should reject the plea offered by the Government, he believed that only still images could be recovered from Mr. Miller's electronics, not videos. Additionally, he testified that he fully advised his client of the possible risks at stake in rejecting the plea, he left the decision to his client, and Petitioner decided to go to trial. Petitioner and his mother claim that Mr. Brown did not so advise them, but the Court finds that Mr. Brown provided Mr. Miller with enough information that he was aware of the situation he faced.

When counsel advises a defendant to reject a plea offer, doing so is not considered objectively unreasonable unless the attorney advises the defendant to reject the plea offer "in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005). Petitioner argued at the evidentiary hearing that

Mr. Brown's performance was objectively unreasonable because there was no contest about the evidence of Petitioner's guilt, and because there were no viable defenses. Mr. Brown maintains that the defense he asserted at trial was viable—if the images and videos had been evaluated according to their content rather than according to Mr. Miller's intent, they would not constitute "pornography." Mr. Brown testified that he saw a split in authority as to how images are determined to be "lascivious" or not, pointing out that the Seventh Circuit had not ruled on the issue directly and the Fifth Circuit had specifically found in *United States v. Steen*, 634 F.3d 822 (5th Cir. 2011), that surreptitiously-obtained images of a nude teenager did not constitute child pornography. *See also* Doc. 8, Exh. 1, p. 13. This argument was rejected at trial, and the Seventh Circuit affirmed the sufficiency of the evidence on appeal, noting that "*[o]f course* there is an element of intent embodied in an evaluation of whether an image is lascivious. If there were not, the statute would criminalize a mother taking a picture of her child in the bathtub or a doctor taking a picture of a minor patient's pubic area for a medical diagnosis." *United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016) (emphasis in original). The Seventh Circuit cited *United States v. Russell*, 662 F.3d 831, 844 (7th Cir. 2011), which stated that "at least in some circumstances, evidence of motive and intent will help to place an image in context, especially where, as here, there is evidence that the photographer posed the minor in such a way that her genitals are visible but has disclaimed any intent to create a sexually suggestive image." *Russell* also stated that "simple nudity" was not itself lascivious, perhaps leading to Mr. Brown's conclusion. *Id*. at 844.

At the evidentiary hearing, Petitioner raised an argument that even if Mr. Brown's argument had been a viable defense to the exploitation charges, it was not for any attempt charges—even if Mr. Brown could have shown that the images themselves did not constitute pornography, that would not be a defense to *attempt* to produce child pornography, given

7

Petitioner's intent to produce images of nude minors for his own sexual gratification.[3] *See, e.g., United States v. Raney*, 342 F.3d 551, 561 (7th Cir. 2003) ("[S]imply because the defendant was unsuccessful in his attempt to actually produce a visual depiction of sexually explicit conduct with a minor does not mean that he did not violate § 2251.") (citing *United States v. Buculei*, 262 F.3d 322, 328–30 (4th Cir. 2001)).

Although reasonable jurists could conceivably disagree on this point, the Court finds that Mr. Brown did not act objectively unreasonably in concluding that the lasciviousness argument was a viable defense, especially at the time of the plea negotiations, when production and attempted production charges had not yet been filed. *Russell* had suggested that the state of the law in the Seventh Circuit required an inquiry into intent when evaluating images for lasciviousness, but that case involved a defendant who directly instructed the children to pose for his photographs in ways that displayed their genitals—a somewhat different situation from Petitioner's surreptitious recording. *Russell*, 662 F.3d at 834. The Seventh Circuit had arguably not addressed this particular situation until it did so in Petitioner's appeal. *Miller*, 829 F.3d at 526 ("Miller's intent is clear. He took substantial steps in modifying his basement, instructing girls to use the downstairs bathroom, and filming them in the shower. The steps Miller took to surreptitiously create the images undermine an inference that there was a legitimate purpose to his video production."). As such, at the time he advised Petitioner on the plea agreement, Mr. Brown could reasonably have believed the intent argument was a viable defense. Petitioner's claim that his counsel was ineffective for failing to properly advise him during plea negotiations

---

[3] The parties agreed at the evidentiary hearing on this matter that, after the August 2013 rejection of the government's plea offer, neither party initiated discussion of a guilty plea. Mr. Miller indicated that he was not aware he could have requested an opportunity to plead guilty after the judicial proceedings began.

is therefore DENIED, but the Court will issue a certificate of appealability on this component of the Motion.

   2. *Trial and Sentencing*

Petitioner alleges in his Motion that Mr. Brown also provided ineffective assistance at trial because he failed to move for a bench trial completely on stipulated facts, and that he failed to advise Petitioner that if he proceeded to a bench trial only on stipulated facts, he could retain eligibility for an "acceptance of responsibility" reduction under the Guidelines, appeal the sufficiency of the evidence, and raise any non-frivolous challenges to the sentencing factors. Doc. 1, p. 18. The United States responds that even if true, this claim would fail the *Strickland* prong for prejudice because the United States would never have agreed to a bench trial on completely stipulated facts, and because the outcome of the sentencing would have been no different—Mr. Brown argued that Mr. Miller should receive the "acceptance of responsibility" reduction because he only went to trial to challenge the applicability of the statute to his stipulated conduct. Doc. 8, p. 18. The Court agrees with the United States' argument that Petitioner has not shown prejudice under *Strickland*, and Petitioner's claim for ineffective assistance of counsel at the trial and sentencing is DENIED.

   3. *Cumulative Effect*

Petitioner claims that the cumulative effect of his counsel's errors violated his Sixth Amendment right to effective assistance of counsel at trial. Doc. 1, p. 23. These errors, according to Petitioner, were: 1. failure to properly advise Petitioner on the repercussions of his guilty plea, 2. failure to move to suppress evidence, 3. failure to present exculpatory evidence or object to the prosecution's evidence, 4. failure to present evidence at sentencing that Petitioner should receive

a reduction for acceptance of responsibility, and 5. failure to disclose a conflict of interest. *Id.*, pp. 22–23.

As discussed above, Mr. Brown testified that he advised his client that he could face a minimum of 15 years of imprisonment if he rejected the 10-year plea offer. Mr. Brown also *did* argue at sentencing that Petitioner should receive a reduction for acceptance of responsibility. R. 68, pp. 33–35. Petitioner's remaining complaints do not specify with any particularity what Mr. Brown should have done, and at an evidentiary hearing on this matter Petitioner admitted that he could not explain the basis for several of these claims. The allegations about evidence fall particularly flat because Petitioner claims now that he would have wanted a bench trial on entirely stipulated facts—if Petitioner would have preferred to concede every fact at issue, he could not have been prejudiced by his attorney's failure to object to evidence establishing those facts. When asked what the source of Mr. Brown's conflict of interest was, Petitioner explained that Mr. Brown was more interested in taking his case to the Supreme Court on the lasciviousness issue than he was in Petitioner's own interests. He provided no further support for this claim, and Mr. Brown testified that while he did believe the legal issue to be an interesting one, he involved Petitioner in their strategizing, including by sitting down with Petitioner and reviewing case law on the matter of what constitutes "lascivious" images. The Court finds that Petitioner has not sufficiently demonstrated that Mr. Brown had any conflict of interest in defending him, nor that Mr. Brown erred by failing to raise evidentiary objections, nor that Mr. Brown failed to properly inform him about the consequences of rejecting a plea agreement. Petitioner has therefore failed to show that his counsel's alleged errors, taken together or separately, amounted to ineffective assistance of counsel, and his third claim is DENIED.

*4. Petitioner's Other Claims*

Where § 2255 motions are based on conclusory allegations without specific details, courts are justified in dismissing them without an evidentiary hearing. *See Boulb v. United States*, 818 F.3d 334, 340 (7th Cir. 2016) (citing *Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002)). "Ground Four" in Petitioner's Motion alleges the following:

> "Mr. Miller's Conviction And Sentence Are Violative Of His Right To Freedom Of Speech And To Petition, His Right To Be Free Of Unreasonable Search And Seizure, His Right To Due Process Of Law, His Rights To Counsel, To Jury Trial, To Confrontation Of Witnesses, To Present A Defense, And To Compulsory Process And His Right To Be Free Of Cruel And Unusual Punishment Under The Constitution."

Doc. 1, p. 8. Petitioner does not provide any further support for these arguments. Given their vague and conclusory nature, this fourth claim is DENIED as well.

### CERTIFICATE OF APPEALABILITY

To obtain a Certificate of Appealability under § 2253(c), "a habeas prisoner must make a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). This means that the prisoner must show "that reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id*. at 484. Although some issues in this case are clear-cut, Mr. Brown's advice regarding the rejection of the 10-year plea agreement based on the availability of a defense that the images were not "lascivious" could be the subject of legitimate legal disagreement. Accordingly, the Court issues a Certificate of Appealability on that issue.

## CONCLUSION

For the reasons set forth herein, Petitioner's Motion (Doc. 1) is DENIED, and the Court issues a Certificate of Appealability.

Signed on this 27th day of February, 2019.

/s James E. Shadid
James E. Shadid
Chief United States District Judge